**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**COOPER CROUSE-HINDS, LLC, COOPER**
**INDUSTRIES, LLC,**

                                            **Plaintiffs,**

          **vs.**                                                      **16-CV-1201**
                                                                       **(MAD/ATB)**

**CITY OF SYRACUSE, NEW YORK, COUNTY**
**OF ONONDAGA, NEW YORK,**

                                            **Defendants.**
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |

| | |
|---|---|
| **SQUIRE PATTON BOGGS LLP** | **BRIAN D. STARER, ESQ.** |
| 30 Rockefeller Plaza, 23rd Floor | **VICTOR GENECIN, ESQ.** |
| New York, New York 10112-0015 | |
| Attorneys for Plaintiffs | |
| | |
| **SQUIRE PATTON BOGGS LLP** | **D. REES ALEXANDER, ESQ.** |
| 41 S. High Street, Suite 2000 | **DANELLE M. GAGLIARDI, ESQ.** |
| Columbus, Ohio 43215 | **REBEKAH M. SINGH, ESQ.** |
| Attorneys for Plaintiffs | **VINCENT ATRIANO, ESQ.** |
| | |
| **HANCOCK ESTABROOK, LLP** | **JOHN G. POWERS, ESQ.** |
| 1500 AXA Tower I | **HOLLY K. AUSTIN, ESQ.** |
| 100 Madison Street | **PAUL J. TUCK, ESQ.** |
| Syracuse, New York 13202 | |
| Attorneys for Defendant City of Syracuse | |
| | |
| **CITY OF SYRACUSE** | **CHRISTINE M. GARVEY, ESQ.** |
| **CORPORATION COUNSEL** | |
| 233 East Washington Street | |
| Room 300 City Hall | |
| Syracuse, New York 13202 | |
| Attorneys for Defendant City of Syracuse | |
| | |
| **ONONDAGA COUNTY** | **BENJAMIN M. YAUS, ESQ.** |
| **DEPARTMENT OF LAW** | |
| John H. Mulroy Civic Center | |
| 421 Montgomery Street, 10th Floor | |
| Syracuse, New York 13202 | |
| Attorneys for Defendant Onondaga County | |

**THE WLADIS LAW FIRM, PC**                **KEVIN C. MURPHY, ESQ.**
6312 Fly Road
East Syracuse, New York 13057
Attorneys for Defendant Onondaga County

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 31, 2017, Plaintiffs Cooper Crouse-Hinds, LLC ("CCH"), and Cooper

Industries, LLC ("CI"), filed the amended complaint in this action against Defendants City of

Syracuse (the "City") and County of Onondaga (the "County"). *See* Dkt. No. 26. This action

arises out of the disposal of hazardous waste at landfills in Syracuse, New York. Plaintiffs seek

relief pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), the New York Hazardous Waste Disposal Site Remedial Program Law ("State

Superfund Law"), the New York Environmental Conservation Law, and the New York Oil Spill

Act ("Navigation Law"), as well common law causes of action. The City and the County filed

separate motions to dismiss, which are presently before the Court. *See* Dkt. Nos. 29, 30. For the

following reasons, the motions are granted in part and denied in part.

### II. BACKGROUND

The Crouse-Hinds Company, the predecessor to Plaintiffs, was founded in 1897 and

manufactured electronic equipment. *See* Dkt. No. 1 at ¶ 14. In approximately 1911, the Crouse-

Hinds Company built a manufacturing facility in Syracuse, New York. *See id.* at ¶ 15. Between

1911 and 1948, the Crouse-Hinds Company acquired property (the "Site") adjacent to the

manufacturing facility that would later be used for the disposal of trash, including solid waste,

foundry sands and cores, scrap wood, and other debris. *See id.* at ¶¶ 16-17. That property was

divided into two separate landfills, each of which contained disposal facilities: the North Landfill,

which is located in the Town of Salina, and the South Landfill, which is located in the City of

Syracuse. *See id.* at ¶¶ 17-18. The North and South Landfills are bisected by Seventh North

Street, and the Ley Creek runs along the northwestern edge of the Site. *See id.* The North

Landfill was in use from the mid-1950s until 1989, and the South Landfill was in use from 1960

until 1969. *See id.* at ¶ 18. The Site is now owned by CCH. *See id.* at ¶ 19. In 1981, CI aquired

ownership of the Crouse-Hinds Company, and the two later merged into Cooper Industries, Inc.,

which is now CI. *See id.* at ¶ 14.

**A.    The City and the County**

On November 4, 1960, the Crouse-Hinds Company and the City of Syracuse Department

of Public Works ("Syracuse DPW") entered into a written indenture agreement ("1960

Indenture") allowing Syracuse DPW to use the South Landfill for waste disposal at no cost. *See*

*id.* at ¶ 20. In the 1960 Indenture, Syracuse DPW agreed to

> release, indemnify and save harmless the Owner from and against
> any and all such loss, injury and damage and any and all claims
> demands, actions, judgments, costs, expenses (including, without
> limitation, reasonable counsel fees) and liabilities of every name
> and nature which may arise or result directly or indirectly from or
> by reason of any such loss, injury or damage or from or by reason
> of the failure of the City fully to keep, perform, observe and fulfill
> any of the covenants, conditions or restrictions herein contained to
> be kept, performed, observed and fulfilled by the City.

*See* Dkt. No. 26-2 at 3. Pursuant to the 1960 Indenture, Syracuse DPW widened, deepened, and

cleaned out streams and culverts at the Site; it built and restored drainage ditches at the Site; and

it cleaned out the Ley Creek Channel. *See* Dkt. No. 26 at ¶¶ 22-23. In connection with that work,

Syracuse DPW dredged sediments and debris containing hazardous substances and petroleum,

and the sediments and debris were dumped at the Site. *Seee id.* at ¶ 25. From approximately

1961 through 1965, Syracuse DPW dumped a total of roughly 520,000 cubic yards of municipal,

commercial, and industrial wastes in the South Landfill, which accounts for approximately one half of all waste dumped in the South Landfill.  *See id.* at ¶ 27.

On multiple occasions in the early 1960s, the Crouse-Hinds Company notified Syracuse DPW that it was disposing of waste in a manner that did not comply with the 1960 Indenture.  *See id.* at ¶¶ 28-31.  In August 1965, Syracuse DPW ceased disposal activities at the South Landfill, but it did not address the conditions at the Site as required by the1960 Indenture.  *See id.* Subsequently, Syracuse DPW leased a property that is adjacent to the North Landfill and was owned by a separate company.  *See id.* at ¶ 32.  To facilitate use of that property, the Crouse-Hinds Company transferred a 100-foot-wide strip of land along the edge of the North Landfill to Syracuse DPW.  *See id.* at ¶ 33.  Syracuse DPW built a road to access the new property using fill that included contaminated sediments.  *See id.*  Syracuse DPW dumped waste at that property from approximately 1965 through 1970.  *See id.* at ¶ 32.

On August 30, 1972, the Crouse-Hinds Company entered into an Option Agreement with Onondaga County that transferred to the County a 1.4-acre strip of property located on the western border of the North Landfill and adjacent to Ley Creek.  *See id.* at ¶ 36.  The agreement also granted the County a right of way along the western side of the South Landfill, and it allowed the County to widen and deepen the Ley Creek channel.  *See id.*  As part of that work, the County spread contaminated dredged spoils from Ley Creek over portions of the South Landfill, which released hazardous substances including PCBs and petroleum at the Site.  *See id.* at ¶ 37.  The 1972 Option Agreement provided that

> the County shall defend, save harmless and indemnify Crouse-Hinds from and against any and all claims against Crouse-Hinds and any and all loss, costs, damages or expenses (including without limitation reasonable counsel fees) which Crouse-Hinds may suffer, sustain or incur by reason of bodily injury (or claims thereof) to any persons whomsoever, or any damages to the real or personal

>property of Crouse-Hinds or of any other person, firm or
>corporation (or claims thereof) arising or which shall be claimed to
>have arisen out of the County's use of the premises described
>herein.

*See* Dkt. No. 26-3 at 6.  In the early 1970s, the Crouse-Hinds Company notified the County that

the County had improperly disposed of dredged spoils contaminated with PCBs and other

hazardous substances at the Site, as well as locations upstream of the Site that led to further

contamination of the Site.  *See id.* at ¶¶ 43-46.

The Crouse-Hinds Company and its successors did not use PCBs in their operations.  *See*

*id.* at ¶ 43.  Therefore, all of the PCB contamination of the Site was a result of actions taken by

the City and the County.  *See id.*  Due to Defendants' disposal of contaminated sediments at and

near the Site, the United States Environmental Protection Agency ("EPA") has identified both the

City and the County as "potentially responsible parties" under CERCLA.  *See id.* at ¶ 46.

**B.    Remedial Activities**

In 1985, the New York State Department of Environmental Conservation ("NYSDEC")

designated the Site as a Class 2 Inactive Hazardous Waste Disposal Site under the State

Superfund Program.  *See id.* at ¶ 47.  On May 14, 2004, CI entered into a Consent Order with

NYSDEC ("2004 Order") pursuant to which CI undertook sampling investigations and studies, as

well as interim response measures at the Site.  *See id.* at ¶ 48.  CCH was not a party to the 2004

Order, but it may have incurred costs related to the 2004 Order's implementation.  *See id.* at

¶¶ 48-49.  CI's investigatory work included obtaining and analyzing samples from various

locations at the Site, including surface soils, surface water, groundwater, and leachate.  *See id.* at

¶ 51.  The sampling revealed sediment exceeding NYSDEC standards for numerous hazardous

substances, including benzene, chlorobenzene, 1,4-dichlorobenzene, PCBs, benzo(a)anthracene,

benzo(b)fluoranthene, benzo(k)fluoranthene, benzo(a)pyrene, chrysene, indeno(1,2,3,-cd)pyrene,

5

phenol, arsenic, cadmium, and chromium.  *See id.* at ¶ 54.  CI's interim response measures

included preventing the migration of contaminated sediments, evaluating and removing free-

phase petroleum product, and installing a security fence.  *See id.* at ¶ 52.

On February 27, 2011, NYSDEC held a public meeting attended by representatives of the

County and the City where it discussed a Proposed Remedial Action Plan for the Site.  *See id.* at

¶ 55.  On March 31, 2011, NYSDEC issued a decision summarizing its findings and outlining a

remediation plan for the Site.  *See id.* at ¶ 56.  CCH agreed to the plan and entered into a consent

order with NYSDEC ("2011 Order") on August 29, 2011, but CI was not a party to the

agreement.  *See id.* at ¶ 57.  The 2011 Order included language providing for release of CCH's

liability to the state "[u]pon the Department's issuance of a Certificate of Completion."  *See id.* at

57.  Plaintiffs took action in accordance with the 2011 Order and began remediation work in

October 2012.  *See id.* at ¶ 59.  Between December 2012 and November 2013, Plaintiffs

undertook significant work, including the excavation and offsite disposal of approximately 650

tons of PCB-contaminated waste and 5,150 tons of petrolium-impacted soils.  *See id.* at ¶¶ 59, 63.

In April 2014, NYSDEC approved an additional Remedial Design plan for the Site, which

required the capping of the North and South landfills, the creation of buffer zones protecting Ley

Creek and wetland areas, the excavation and disposal of hot spots, and the restoration of wetlands

and drainage channels.  *See id.* at ¶ 64.  CCH disposed of an additional 825 tons of PCB-

contaminated waste from the North Landfill in 2015, and the capping of the North and South

Landfills is now complete.  *See id.* at ¶¶ 65-66.  To date, Plaintiffs have spent $11.9 million to

investigate and remediate contamination at the Site, and long-term operation and maintenance

over the next thirty years are estimated to cost an additional $1.14 million.  *See id.* at ¶ 68.

Prior to filing the complaint in this action, Plaintiffs attempted to secure contributions from the City and the County.  *See id.* at ¶ 70.  During those negotiations, CCH, the City, and the County entered into an agreement tolling all "potential legal and contractual claims" for the period from August 25, 2014 through October 3, 2016.  *See id.* at ¶ 70.  To date, neither the City nor the County has made any financial contribution to remediating contamination at the Site.  *See id.* at ¶ 69.

## C.     Procedural History

On October 4, 2016, CCH filed the complaint in this action.  *See* Dkt. No. 1.  On March 31, 2017, Plaintiffs filed the amended complaint, which named CI as a Plaintiff.  *See* Dkt. No. 26. In the amended complaint, Plaintiffs state the following causes of action: (1) cost recovery under CERCLA, (2) contribution under CERCLA, (3) declaratory relief under CERCLA and New York law, (4) breach of contract and contractual indemnity against the City, (5) breach of contract and contractual indemnity against the County, (6) contribution under the New York State Superfund Law, (7) strict liability under the New York Spill Act, (8) contribution under the New York Navigation Law, and (9) unjust enrichment.  *See* Dkt. No. 26 at ¶¶ 72, 86, 93, 97, 110, 122, 128, 137, 143.  Defendants filed two separate motions to dismiss.  *See* Dkt. Nos. 29, 30. The City adopted all applicable arguments made in the County's brief, and the County did the same in regard to the City's brief.  *See* Dkt. No. 30-1 at 25; Dkt. No. 29-1 at 21.  Plaintiffs opposed the motions, *see* Dkt. Nos. 33, 34, and Defendants filed replies, *see* Dkt. Nos. 35, 36.

## III. LEGAL STANDARD

## A.     Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*,

508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see also Sutton ex rel. Rose v. Wachovia Secs., LLC*, 208 Fed. Appx. 27, 29-30 (2d Cir. 2006) (noting that, on a motion to dismiss, a court may take judicial notice of documents filed in another court).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at

8

558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.* at 570.

## B.     Statute of Limitations

The statute of limitations is an affirmative defense, and it is well established that "[c]omplaints need not anticipate, or attempt to plead around, potential affirmative defenses." *High Falls Brewing Co., LLC v. Boston Beer Corp.*, 852 F. Supp. 2d 306, 310 (W.D.N.Y. 2011). "Requiring plaintiffs to allege in a complaint facts sufficient to overcome a statute of limitations affirmative defense would shift the burden to raise and prove the affirmative defense from defendants, as the burden is allocated and imposed by Rule 8(c)(1) of the Federal Rules of Civil Procedure, to plaintiffs." *Kattu v. Metro Petroleum, Inc.*, No. 12-CV-54, 2013 WL 4015342, *4 (W.D.N.Y. Aug. 6, 2013).

Therefore, a statute of limitations defense must generally wait until after the motion-to-dismiss stage. *See id.* However, a complaint may be dismissed under Federal Rule of Procedure 12(b)(6) as barred by a statute of limitations where the complaint clearly shows that the plaintiff's claim is barred. *See Messeroux v. Maimonides Med. Ctr.*, No. 11-CV-5343, 2013 WL 2414690, *1 (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *see also Harris v. City of New York*, 186 F.3d 243, 250 (dismissing claims as time-barred at the pleading stage is "appropriate only if a complaint clearly shows the claim is out of time").

## IV. DISCUSSION

## A.     CERCLA

Enacted in 1980 in response to New York's Love Canal Disaster,[1] CERCLA "is a remedial statute 'designed to encourage prompt and effective cleanup of hazardous waste sites' by 'assuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions.'" *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 392-93 (N.D.N.Y. 2013) (quoting *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010)).  "In furtherance of these purposes, the statute imposes strict liability on owners and facility operators, on persons who arranged for the disposal or treatment of hazardous waste at the relevant site, and on persons who transported hazardous waste to the site." *Price Trucking Corp. v. Norampac Indus., Inc.*, 78 F.3d 75, 80 (2d Cir. 2014) (citing 42 U.S.C. § 9607(a)(1)–(4)).

Under CERCLA, States and the federal government may "initiate comprehensive cleanups and . . . seek recovery of expenses associated with those cleanups" from property owners, who are strictly liable for the hazardous materials on their property.  *Niagara Mohawk*, 596 F.3d at 120. To relieve the burden on property owners, CERCLA permits them to "seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters—the so-called potentially responsible parties ('PRPs')." *Id.* citing (42 U.S.C. § 9607(a)).  That recourse is available through three separate provisions in CERCLA: §§ 107(a), 113(f)(1), and 113(f)(3)(B). *See id.*

---

[1] After serving as a dumping ground for toxic waste, a canal was filled and sold to the city of Niagara Falls and used as the site for a elementary school and playground—decades later state and federal government investigations revealed that the toxic waste had caused pervasive health problems, leading then-President Carter to declare a federal emergency. *See Niagara Mohawk*, 596 F.3d at 120 n.5 (citing Michael H. Brown, *Love Canal and the Poisoning of America*, ATLANTIC MONTHLY, Dec. 1979, at 33).

Section 107(a) authorizes parties—including the United States, a state, or a PRP—to seek reimbursement for costs incurred remediating pollution at a property.  *See* 42 U.S.C. § 9607(a)(4). However, parties may recover remediation costs only if the actions they take are consistent with the National Contingency Plan, which is "the federal government's roadmap for responding to the release of hazardous substances."  *Niagara Mohawk*, 596 F.3d at 121.  Section 113(f)(3)(B), on the other hand, "provides a right of contribution to PRPs that have settled their CERCLA liabilty with a state or the United States through either an administrative or judicially approved settlement."  *Id.* (citing 42 U.S.C. § 9613(f)(3)(B)).  Finally, § 113(f)(1) provides a right of contribution to PRPs that have been sued under §§ 106 or 107.  *See* 42 U.S.C. § 9613(f)(1).

Plaintiffs may seek reimbursement of remedial costs under either § 107(a) or § 113(f) but not both.  "Each CERCLA right of action carries with it its own statutory trigger, and each is a distinct remedy available" to persons in different situations.  *Bernstein v. Bankert*, 733 F.3d 190, 202 (7th Cir. 2013); *see also MPM Silicones*, 931 F. Supp. 2d at 394 ("[T]he remedies in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances'") (quoting *United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007)).  If a PRP has been sued under §§ 106 or 107, it may recover contributions pursuant to § 113(f)(1).  *See Bernstein*, 733 F.3d at 202.  If a PRP has resolved its liability to the federal or state government in an administrative or judicially approved settlement, it may recover contributions pursuant to § 113(f)(3)(B).  *See id.*  Only if neither of those two conditions are present may a PRP bring a cost recovery action under § 107.  *See id.*; *see also DMJ Assocs., L.L.C. v. Capasso*, 181 F. Supp. 3d 162, 169 (E.D.N.Y. 2016) ("Accordingly, some of the [plaintiffs'] costs are recoverable only under § 107, while some are separately recoverable only under § 113.  Consistent with the Supreme Court's holding in [*United States v. Atlantic Research*

*Corp.*, 551 U.S. 128 (2007)], none of the listed costs are recoverable under both sections simultaneously").

    *1. Availability of §§ 107 and 113(f)(3)(b)*

    Defendants argue that Plaintiffs are precluded from bringing certain claims under § 107 in this case. *See* Dkt. No. 29-1 at 6. In particular, Defendants argue that the 2004 Order resolved CI's liability for the costs incurred in complying with that order, which constitutes a statutory trigger requiring CI to proceed under § 113(f)(3)(B), not § 107. *See id.* at 13. Similarly, Defendants argue that CCH cannot bring a § 107 claim for costs related to the 2011 Order because the 2011 Order resolved CCH's liability for those costs, and CI may therefore only recover those costs through a claim under § 113(f)(3)(B). *See id.* at 11-12.

    a. The 2004 Order

    In 2004, CI entered into a Consent Order with NYSDEC in which CI agreed to investigate the contamination at the Site and implement interim response measures to address contamination. *See* Dkt. No. 26 at ¶ 48. CI incurred response costs in complying with the 2004 Order. *See id.* at 49. Defendants argue that the 2004 Order resolved CI's liability for response actions taken in relation to the 2004 Order. *See* Dkt. No. 29-1 at 13. However, Defendants do not cite to any language in the order resolving CI's liability; indeed, it appears that no such language exists. As Plaintiffs point out, the 2004 Order specifically states, "Nothing contained in this Order shall be construed as barring, diminishing, adjudicating, or in any way affecting any of the Department's rights." Dkt. No. 29-3 at 13.

    As the Court notes above, § 113(f)(3)(B) is the proper procedural mechanism for a "person who has resolved its liability to the United States or a state for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved

12

settlement." 42 U.S.C. § 9613(f)(3)(B).  But a consent order with the federal or state government does not necessarily qualify as an "administrative or judicially approved settlement" that would require a PRP to proceed under § 113(f)(3)(B).  If, for example, a PRP enters into a consent order, but "the consent order [does] not purport to resolve CERCLA liability," then the consent order does "not qualify as an administrative settlement under § 113." *Niagara Mohawk*, 596 F.3d at 125; *HLP Props., LLC v. Cons. Edison Co. of N.Y., Inc.*, No. 14-CV-1383, 2014 WL 6604741, *7 (S.D.N.Y. Nov. 21, 2014) ("[A] consent order is an administrative settlement of liability for purposes of § 113 where the plaintiff undertook to remediate a contaminated site in exchange for an express resolution of liability under CERCLA and the DEC's covenant not to sue under 'State or Federal statutory or common law'") (quoting *Niagara Mohawk*, 596 F.3d at 126).  Because the 2004 Order does not resolve CI's liability, CI may proceed under § 107.

       b. The 2011 Order

       In 2011, CCH entered into a consent order with NYSDEC to address the contamination at the Site.  *See* Dkt. No. 26 at ¶¶ 56-58.  Under the 2011 Order, CCH agreed to take actions to investigate, remove, and safely dispose of hazardous waste in the short term, as well as to take long-term remedial actions at the Site.  *See id.* at ¶ 58.  CCH has incurred financial costs in carrying out the actions outlined in the 2011 Order.  *See id.*  Unlike the 2004 Order, the 2011 Order contains language potentially resolving CCH's liability under CERCLA.  Specifically, the 2011 Order states, "Upon the Department's issuance of a Certificate of Completion as provided at 6 NYCRR 375-1.9 and 375-2.9, Respondent [CCH] shall obtain the benefits conferred by such provisions, subject to the terms and conditions described therein."  Dkt. No. 29-4 at 6.[2]  Under the

---

    [2] Among other provisions, 6 NYCRR section 375-2.9(a) states: "Upon receipt of the certificate of completion and subject to subdivision (b) of this section, the parties named on such certificate shall not be liable to the department upon any statutory or common law cause of action,

2011 Order, CCH's release from liability is conditional in that it only occurs "[u]pon the

Department's issuance of a Certificate of Completion." *See id.* Thus far, CCH has not received a

certificate of completion from NYSDEC. *See* Dkt. No. 33 at 10. The question, then, is whether a

conditional release from reliability is sufficient to trigger the requirement that a PRP proceed

under § 113(f)(3)(B). Or is liability resolved only after the certificate of completion is issued?

There is a great deal of inconsistency among the cases addressing consent orders that

conditionally resolve a PRP's CERCLA liability and whether those consent orders trigger the

requirement to proceed under § 113(f)(3)(B). Indeed, there is a circuit split on this issue.

*Compare Fla. Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1001 (6th Cir. 2015) (holding

that consent orders in the case "do not resolve plaintiff's liability because resolution of liability is

conditioned on plaintiff's performance and does not take immediate effect"); *and Bernstein v.*

*Bankert*, 733 F.3d 190, 210 (7th Cir. 2013) (holding that the plaintiff had not resolved its liability

with the EPA because the consent order's release of liability was conditioned the plaintiff's

complete performance); *with Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1125 (9th Cir.

2017) (holding that a PRP resolves its liability to the government where a settlement agreement

decides the PRP's obligations with certainty and finality, and a "covenant not to sue or release

from liability conditioned on completed performance does not undermine such a resolution").

The Second Circuit has not yet weighed in on the issue,[3] and district courts in this circuit

---

except for one for natural resource damages . . . ."

[3] Defendants argue that the Second Circuit resolved the issue in *Niagara Mohawk* and held
that a consent order with a conditional release of liability is sufficient to resolve liability for the
purposes of § 113(f)(3)(B). *See* Dkt. No. 36 at 2. Indeed, the court in *Niagara Mohawk* stated
that "NiMo settled its CERCLA liability with DEC by agreeing to identify and to remediate some
of the hazardous substances." *Niagara Mohawk*, 596 F.3d at 128. While this sentence implies
that the act of agreeing was sufficient to trigger § 113(f)(3)(B), the court goes on to say that
"[o]nce NiMo *completed the Consent Order responsibilities*, Nimo was 'deemed to have resolved

have come to differing conclusions. *Compare DMJ Assocs.*, 181 F. Supp. 3d at 167 ("Since no final report was issued due to the [consent order's] termination prior to the completion of all remedial action, the [plaintiffs] had not been released from liability" and therefore could proceed under 107(a)); *with HLP Props.*, 2014 WL 6604741, at *5 ("[A]greements providing for future resolution of CERCLA liability constitute administrative settlements for purposes of § 113"); *and Chitayat v. Vanderbilt Assoc.*, 702 F. Supp. 2d 69, 81 (E.D.N.Y. 2010) (finding that a consent order resolved liability even though it did "not offer [the plaintiff] a present release from liability but rather the release [was] contingent upon years of Compliance with the Consent Order").

Perhaps because the circuit split arose after the motions to dismiss were fully submitted, the parties did not thoroughly address the issue in their briefs.  Furthermore, the question of whether CCH resolved its liability through the 2011 Order necessarily involves contract interpretation.  *See Bernstein*, 733 F.3d at 213 ("Whether or not liability is resolved through a settlement simply is not the sort of question which can or should be decided by universal rule. Instead, it requires a look at the terms of the settlement on a case-by-case basis"); *Asarco*, 866 F.3d at 1122 (holding that an agreement must "decide[] with finality the scope of a PRP's legal exposure and obligations" in order to resolve liability).  The parties did not brief that issue. Therefore, at this time the Court declines to determine whether the 2011 Order resolved CCH's liability and requires it to proceed under § 113(f)(3)(B).

*2. Failure to State a Claim Under § 107*

Defendants also seek to partially dismiss CCH's claim for cost recovery under § 107.  *See* Dkt. No. 29-1 at 12-13.  In particular, Defendants argue that CCH fails to allege that it incurred

---

its liability to the State for purposes of contribution protection provided by CERCLA Section 113(f)(2)' and thus was 'entitled to seek contribution.'"  *Id.* at 126 (emphasis added).  Therefore, the Court does not agree that *Niagara Mohawk* resolved the question at hand.

any costs outside of the costs incurred complying with the 2011 Order.  *See* Dkt. No. 36 at 4. Indeed, CCH was not a party to the 2004 Order, and the amended complaint alleges only that "CCH also may have incurred response costs in connection with implementation of the 2004 Consent Order."  Dkt. No. 26 at ¶ 49.  Therefore, Defendants argue, CCH fails to state a claim for cost recovery under § 107 as to any costs other than the costs incurred in complying with the 2011 Order.

To make a prima facie case for liability under § 107, a plaintiff must show that: "(1) the defendant is an 'owner' or is otherwise liable under 42 U.S.C. § 9607(a)(1)-(4); (2) the site is a 'facility' as defined by 42 U.S.C. § 9601(9); (3) there has been a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or the threat; and (5) the costs and response conform to the National Contingency Plan."  *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 80 (2d Cir. 2014).

Here, Defendants argue that CCH failed to plead a necessary element of its § 107 claim because it failed to identify with certainty or specificity any costs incurred under the 2004 Order. But CCH does not need to specifically identify costs related to the 2004 Order at this stage; CCH separately established the fourth element of a § 107 claim by alleging that it incurred costs under the 2011 Order.  Therefore, Defendants motion to dismiss CCH's § 107 claim as to costs related to the 2004 Order is denied.

### 3. Statute of Limitations

Under CERCLA, there are different statute of limitations periods for claims under §§ 107 and 113.  The statute of limitations for a contribution claim under § 113 is three years, while the

limitations period for cost recovery claims under § 107 is six years.  *See* 42 U.S.C. § 9613(g).[4]

Defendants argue that CI's § 113 claim is time-barred because it is based on costs incurred in

complying with the 2004 Order.

The statute of limitations on a § 113(f)(3)(B) claim begins to run at the time that a PRP

settles its CERCLA liability with the state or federal government.  *See* 42 U.S.C. § 9613(g)(3);

*see also HLP Props.*, 2014 WL 6604741, at *7 (noting that for a claim under § 113, "the

'triggering event' for the statute of limitations period was the date that the [plaintiffs] 'resolved

their CERCLA liability'").  In this case, however, Plaintiffs clearly allege that CI did not resolve

any liability through either the 2004 Order or the 2011 Order.  CI was a party to the 2004 Order,

but Plaintiffs allege that the 2004 Order "did not contain any language purporting to resolve

Plaintiffs' potential liability to the State with respect to the Site."  Dkt. No. 26 at ¶ 48.  As for the

2011 Order, Plaintiffs admit in their opposition that any release of liability would "apply only to

CCH (the "Respondent") and not to CCH's affiliates such as CI."  Dkt. No. 33 at 10.  Since

neither agreement resolves CI's liability, the statute of limitations for any potential § 113 claim

has not yet been triggered.

But this raises a separate issue regarding CI's § 113 claim: there do not appear to be any

facts alleged in the amended complaint that support a § 113 on CI's behalf.  Nothing in the

complaint indicates that CI has—or even could—resolve its liability through either the 2004

Order or the 2011 Order.  Therefore, it appears that Plaintiffs have failed to state a § 113(f)(3)(B)

claim on CI's behalf.  A court may dismiss a complaint *sua sponte* for failure to state a claim on

---

[4] The six-year statute of limitations under § 107 applies only to "remedial actions," which
are "generally long-term or permanent containment or disposal programs."  *Schaefer v. Town of
Victor*, 457 F.3d 188, 195 (2d Cir. 2006).  On the other hand, "removal efforts," which are
"typically short-term cleanup arrangements," are subject to a three year statute of limitations.  *See
id.*

which relief can be granted, but "it may not properly do so without giving the plaintiff an opportunity to be heard." *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991). Therefore, the Court orders Plaintiffs to provide a supplemental brief to the Court explaining why CI's § 113 claim should not be dismissed for failure to state a claim. *See MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 396 (N.D.N.Y. 2013) (dismissing the plaintiff's § 113(f) claim *sua sponte* after requesting supplemental briefing from the plaintiff explaining why its 113(f) claim was not barred). Plaintiffs must submit the supplemental brief within thirty (30) days of the date of this Memorandum-Decision and Order.

**B.     State Law Claims**

*1. Notice of Claim*

The general rule in federal court is that "state notice-of-claim statutes apply to state-law claims." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). A notice-of-claim statute generally provides that no action may be brought on or maintained against certain government entities without first providing written notice of the claim. New York's notice-of-claim statute requires a plaintiff to serve a notice of claim "within ninety days after the claim arises," N.Y. Gen. Mun. Law § 50-e(1)(a), and that notice must state the nature of the claim, as well as "the time when, the place where and the manner in which the claim arose," *id.* § 50-e(2). Nowhere in the amended complaint do Plaintiffs allege that they filed any notice of claim or otherwise complied with a notice-of-claim statute.

a. City of Syracuse

The City begins by arguing that Plaintiffs' breach of contract and indemnification claims should be dismissed because Plaintiffs failed to file a notice of claim. *See* Dkt. No. 30-1 at 15. Again, Plaintiffs do not assert that they filed any notice of claim in this case. Instead, they make

three different arguments for why the notice-of-claim requirement does not apply to their contract claims: (1) compliance with notice-of-claim statutes is an affirmative defense; (2) the New York notice-of-claim statute does not apply to breach of contract claims; and (3) applying the notice-of-claim requirements in the Syracuse Charter would violate the Contracts Clause of the United States Constitution.  *See* Dkt. No. 34 at 13-16.

As for their first assertion, Plaintiffs are incorrect—compliance with notice-of-claim statutes is a pleading requirement, not an affirmative defense.  "Service of a notice of claim . . . is a condition precedent to commencing an action . . . ."  *Maxwell v. City of New York*, 29 A.D.3d 540, 541 (2d Dep't 2006).  "New York's law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  *Hardy*, 164 F.3d at 793.  "Notice of claim requirements 'are construed strictly by New York state courts,'" and the "[f]ailure to comply with these requirement ordinarily requires a dismissal for failure to state a cause of action."  *Id.* at 793-94 (quoting *Murray v. LeRoy Cent. Sch. Dist.*, 67 N.Y.2d 775, 775 (1986)).

Plaintiffs' second argument also misses the mark.  Plaintiffs correctly note that the New York General Municipal Law does not require plaintiffs to file a notice of claim in a breach of contract action.  *See* N.Y. Gen. Mun. Law § 50-e(a) ("In any case *founded upon tort* where a notice of claim is required by law as a condition precedent . . . ." (emphasis added)); *see also Finke v. City of Glen Cove*, 55 A.D.3d 785, 786 (2d Dep't 2008) ("The plaintiff's breach of implied contract and breach of license causes of action, however, are not subject to the notice of claim requirement").  For example, in *Strauss v. City of Glens Falls*, 140 A.D.3d 1411 (3d Dep't 2016), the court declined to dismiss a breach of contract claim because of the plaintiff's failure to

file a notice of claim.  In that case, the court noted that the notice of claim provisions in the

Charter of the City of Glens Falls, like those of the General Municipal Law, did not apply to

breach of contract claims.  *See id.* at 1412.

In this case, however, Plaintiffs are subject to the notice-of-claim provision in Syracuse

City Charter § 8-115(3), which states:

> No action or special proceeding, for any cause whatever, except as
> hereinafter provided, relating to city property or involving the rights
> or interests of the city shall be prosecuted or maintained against the
> city unless it shall appear by and as an allegation in the complaint
> or necessary moving papers that a written verified claim upon
> which such action or special proceeding is founded was served on
> the city, in the same manner as a summons under the CPLR, within
> three (3) months after the accrual of such claim.  The provisions of
> this section shall not apply to an action or special proceeding
> founded upon tort which shall be governed by the provision of
> sections 50-i and 50-e of the General Municipal Law.

*See* Dkt. No. 30-7 at 73.  New York courts have consistently held that this provision applies to

claims for breach of contract.  In *Davis-Wallbridge, Inc. v. City of Syracuse*, 71 N.Y.2d 842, 843

(1988), the New York Court of Appeals dismissed the plaintiff's breach of contract claim because

the plaintiff admittedly failed to comply with the notice-of-claim provision.  *See id*; *see also Tom*

*L. La Mere & Assoc., Inc. v. City of Syracuse Bd. of Educ.*, 48 A.D.3d 1050, 1051 (4th Dep't

2008) (applying Syracuse's notice of claim provisions to a breach of contract claim).  In this case,

it is undisputed that Plaintiffs have not complied with Syracuse's notice of claim provision.

Finally, Plaintiffs argue that applying the Syracuse City Charter's current notice-of-claim

provision would violate the Contracts Clause of the United States Constitution.  According to

Plaintiffs, the notice-of-claim provision in the Syracuse City Charter was not amended to apply to

breach of contract claims until "1978 or 1981," well after the City entered into the 1960 Indenture

with the Cooper Crouse Company.  *See* Dkt. No. 34 at 14.  Therefore, Plaintiffs argue, the

Contracts Clause requires that claims in this case be subject to the version of the Syracuse City Charter that was in effect in 1960, prior to the amendment of the notice-of-claim provision. *See id.*

The United States Supreme Court considered and rejected a similar argument in *Oshkosh Waterworks Co. v. City of Oshkosh*, 23 S. Ct. 234 (1903). In that case, the plaintiff entered into a contract with the city of Oshkosh in 1883, eight years before the city amended its charter to include a notice-of-claim provision. *See id.* at 234. The plaintiff sued the city in 1900, but the suit was dismissed because the plaintiff failed to file a notice of claim. *See id.* The Court upheld the dismissal, holding that "the changes made by the revised charter of Oshkosh, in respect of remedies for the enforcement of claims against that city, provided for its creditors a substantial and adequate remedy, and therefore did not impair the obligation of contracts with that municipal corporation." *See id.* at 447. It is now well established that "a plaintiff's claim is governed by the notice of claim statute in effect when his or her claim accrued." *Aponte v. Bellevue Hosp. Ctr.*, 183 A.D.2d 594, 595 (1st Dep't 1992); *see also Ganess v. City of New York*, 207 A.D.2d 765, 767 (2d Dep't 1994) ("Because the infant plaintiff's cause of action accrued in 1973, the present case is governed by those provisions which were contained in the version of General Municipal Law § 50-e which was in effect prior to a 1976 amendment"). Therefore, Plaintiffs' breach of contract claim against the City must be dismissed.

Later in its motion to dismiss, the City goes on to argue that "all of Plaintiffs' state law claims against the City" should be dismissed due to Plaintiffs' failure to file a notice of claim. *See* Dkt. No. 30-1 at 18. Plaintiffs do not address this contention, but the Court agrees and dismisses each of Plaintiffs' state law claims against the City because the Syracuse City Charter clearly

states that a notice of claim must be filed where a party seeks to bring an action "for any cause

whatever."  Syracuse City Charter § 8-115(3).

> b. County of Onondaga

In New York, suits against counties are also subject to notice-of-claim requirements.  New

York County Law § 52 ("Section 52") provides that

> [a]ny claim or notice of claim against a county . . . for damages
> arising at law or in equity . . . alleged to have been caused in whole
> or in part by or because of any misfeasance, omission of duty,
> negligence, or wrongful act on the part of the county, its officers,
> agents, servants or employees, must be made and served in
> compliance with section fifty-e of the general municipal law. . . .
> Every Action upon such claim shall be commenced pursuant to the
> provisions of section fifty-i of the general municipal law.

The text of Section 52 thus incorporates the notice of claim requirements of New York General

Municipal Law §§ 50-e and 50-i, but it also broadens their scope.  *See Anderson v. Nassau Cty.*

*Dep't of Corrs.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008) ("N.Y. County Law § 52(1) has

broader application than General Municipal Law § 50-e").  Unlike Section 50-e, which applies

only in "any case founded upon tort," Section 52 applies to "any claim . . . of every name and

nature."  N.Y. County Law § 52(1).

The plain language of the statute seems to indicate that it applies to "any claim," including

a claim for breach of contract.  Indeed, at least one federal district court has come to that

conclusion.  *See Crippen v. Town of Hempstead*, No. 07-CV-3478, 2009 WL 803117, *16

(E.D.N.Y. 2009) (dismissing a breach of contract claim due to the plaintiff's failure to comply

with Section 52's notice-of-claim provision).  However, New York courts have determined that

Section 52 "does not require a filing of a notice of claim in compliance with General Municipal

Law § 50-e where the claim is for breach of contract."  *Copece Contracting Corp. v. Erie County*,

115 A.D.2d 320, 320 (4th Dep't 1985); *see also Smith v. Rise E. Sch.*, 120 A.D.2d 726, 726 (2d

Dep't 1986) ("We do not believe the Court of Appeals . . . intended to construe County Law § 52 as requiring the serving of a notice of claim in actions to recover damages for breach of contract"); *O'Connell v. Onondaga County*, No. 09-CV-364, 2012 WL 12895022, *14 (N.D.N.Y. Feb. 9, 2012) ("[E]ven though County Law § 52 generally applies to any claim for damages against a county, breach-of-contract claims are not subject to the notice-of-claim requirements of County Law § 52" (citations omitted)).

Therefore, all of Plaintiffs state law claims against the County, except for their breach of contract claim, are subject to Section 52's notice-of-claim requirements and must be dismissed. *See e.g. Bartley v. County of Orange*, 111 A.D.3d 772, 773-74 (2d Dep't 2013) ("The assertion of a Navigation Law . . . cause of action against the County, which could result in the County being held strictly liable for all cleanup costs and damages resulting from a discharge of petroleum, is subject to the broad notice-of-claim requirements of County Law § 52").

### c. Summary

The Court dismisses the following claims due to Plaintiffs' failure to comply with the relevant notice-of-claim requirements: declaratory relief under New York Law (third cause of action), breach of contract and contractual indemnity against the City (fourth cause of action), contribution under the state superfund law (sixth cause of action), claims under the New York Navigation Law (seventh and eighth causes of action), and unjust enrichment (ninth cause of action). Therefore, Plaintiffs' only remaining state law claim is their fifth cause of action: breach of contract and contractual indemnity against the County.

### 2. Breach of Contract Against the County

Plaintiffs' breach of contract action against the County arises from the County's alleged failure "to fully keep, perform, observe, and fulfill its respective covenants, conditions, and/or

23

restrictions" under the 1972 Option Agreement with the Crouse-Hinds Company.  Dkt. No. 26 at ¶ 116.  The amended complaint appears to assert separate claims for breach of contract and contractual indemnity under what is labeled as the fifth cause of action.  Essentially, Plaintiffs seem to allege that the County breached the 1972 Option Agreement by dumping contaminated dredged spoils at the Site, and that the County is also liable under the 1972 Option Agreement's indemnity clause because it failed to save CI harmless from loss, costs, damages, or expenses.  *See id.* at ¶¶ 117-19.  Defendants move to dismiss the breach of contract and contractual indemnity claims against the County as (1) barred by the statute of limitations and (2) preempted by CERCLA.

> a. Statute of Limitations

A claim for breach of contract is subject to a six-year statute of limitations.  *See* N.Y. C.P.L.R. § 213(2).  "In New York, a breach of contract cause of action accrues at the time of the breach," even when "no damage occurs until later."  *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993).  Furthermore, "[k]nowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in [a] contract [action]."  *Id.* (alterations in original) (quoting *Varga v. Credit-Suisse*, 5 A.D.2d 289, 292 (1st Dep't 1958)).  A claim for indemnification, on the other hand, is subject to a six-year statute of limitations that begins to run "when the loss is suffered by the party seeking indemnity." *McDermott v. City of New York*, 50 N.Y.2d 211, 215 (1980); *see also Patel v. Exxon Corp.*, 284 A.D.2d 1007, 1008 (4th Dep't 2001) (an indemnification cause of action for recovery of remediation costs "will not commence until the cleanup costs are incurred").  Additionally, "[e]ach payment of remediation costs . . . incurs a new loss for a plaintiff, creating a new indemnity claim with its own new statute of limitations (it *does not*, however, reset the clock on

an already-expired indemnity claim)." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 04-CV-5424, 2007 WL 1601491, *16 (S.D.N.Y. June 4, 2007).

To the extent that Plaintiffs assert a breach of contract claim against the county that is separate from the indemnification claim, that claim is barred by the statute of limitations.  The amended complaint alleges that the County disposed of contaminated dredge spoils at or upstream from the Site in the "1970s and/or 1980s," but the amended complaint does not allege any more recent breaches of the 1972 Option Agreement.  *See* Dkt. No. 26 at ¶¶ 39-45.  Therefore, it is clear from the face of the amended complaint that Plaintiffs' breach of contract claim is time-barred.

As for Plaintiffs' indemnification claim, Plaintiffs' complaint was filed on October 4, 2016, and Plaintiffs allege that they repeatedly incurred remediation costs in the six years before the amended complaint was filed.  *See id.* at ¶¶ 55-68.  Therefore, Plaintiffs' indemnification claim is timely with respect to at least some of the costs incurred.  While other costs may be barred by the statute of limitations, it is not appropriate for the Court to determine which costs are time-barred at this stage in the proceedings.  *See Kattu v. Metro Petroleum, Inc.*, No. 12-CV-54, 2013 WL 4015342, *4 (W.D.N.Y. Aug. 6, 2013).

b. Preemption

"The Supremacy Clause of the United States Constitution 'invalidates state laws that interfere with, or are contrary to federal law.'" *Bonilla v. Semple*, No. 15-CV-1614, 2016 WL 4582038, *5 (D. Conn. Sept. 1, 2016) (quoting U.S. Const. art VI, cl. 2).  There are three different types of preemption:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict

> preemption, where local law conflicts with federal law such that it
> is impossible for a party to comply with both or the local law is an
> obstacle to the achievement of federal objectives.

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citations and

quotations omitted).  CERCLA does not expressly preempt state law, nor is it so comprehensive

as to preempt state law by occupying the entire field.  *See Niagara Mohawk*, 596 F.3d at 138.

CERCLA may, however, preempt state law where there is "preemption by conflict."  *See id.*  In

particular, PRPs should not "have both a federal and a state law based claim for recovery of the

same response expenditures."  *Id.; see also MPM Silicones*, 931 F. Supp. 2d at 406 ("[W]hether

state-law claims are preempted by CERCLA boils down to whether double recovery . . . will

occur").

At this stage in the litigation, it remains unclear which costs Plaintiff will be able recover

under CERCLA, or even whether Plaintiffs will recover under §§ 107 or 113.  Therefore, a

finding that Plaintiffs' contract claim is preempted by CERCLA would be premature.

Confronting a similar situation, the court in *Fitzgibbons* found that

> the record does not establish that recovery would be identical under
> Plaintiff's CERCLA and state-law claims; and, even assuming
> *arguendo* that the recovery would be identical, the possibility still
> exists that Plaintiff would ultimately be unable to recover under
> CERCLA.  Accordingly, "it would seem imprudent to dismiss state
> law claims outright on Rule 12 because of a mere *potential* for
> double recovery."

*Fitzgibbons*, 2011 WL 6218208, at *14 (quoting *New York v. W. Side Corp.*, 790 F. Supp. 2d 13,

26 (E.D.N.Y. 2011)).  Thus, the Court declines to address the possibility of preemption at this

time.

## V. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions to dismiss (Dkt. Nos. 29, 30) are **DENIED in part** as to Plaintiffs' CERCLA claims and their contractual indemnification claim against the County, and **GRANTED in part** as to all other claims; and the Court further

**ORDERS** Plaintiffs to file a supplemental brief within **thirty (30) days** explaining why CI's § 113 claim should not be dismissed for failure to state a claim; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 12, 2018
      Albany, New York

Mae A. D'Agostino
U.S. District Judge