**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**COOPER CROUSE-HINDS, LLC, COOPER**
**INDUSTRIES, LLC,**

                                        **Plaintiffs,**

         **vs.**
                                                            **5:16-cv-1201**
                                                            **(MAD/ATB)**

**CITY OF SYRACUSE, NEW YORK, COUNTY OF**
**ONONDAGA, NEW YORK,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**SQUIRE PATTON BOGGS LLP**               **BRIAN D. STARER, ESQ.**
1211 Avenue of the Americas, 26th Floor   **VICTOR GENECIN, ESQ.**
New York, New York 10112
Attorneys for Plaintiffs

**SQUIRE PATTON BOGGS LLP**               **D. REES ALEXANDER, ESQ.**
41 S. High Street, Suite 2000            **DANELLE M. GAGLIARDI, ESQ.**
Columbus, Ohio 43215                      **REBEKAH M. SINGH, ESQ.**
Attorneys for Plaintiffs                  **VINCENT ATRIANO, ESQ.**

**HANCOCK ESTABROOK, LLP**               **JOHN G. POWERS, ESQ.**
1800 AXA Tower I                          **MARY L. D'AGOSTINO, ESQ.**
100 Madison Street
Syracuse, New York 13202
Attorneys for Defendant City of Syracuse

**CITY OF SYRACUSE**                      **TODD M. LONG, ESQ.**
**LAW DEPARTMENT**
233 East Washington Street
300 City Hall
Syracuse, New York 13202
Attorneys for Defendant City of Syracuse

**ONONDAGA COUNTY**                       **BENJAMIN M. YAUS, ESQ.**
**DEPARTMENT OF LAW**
John H. Mulroy Civic Center

1

421 Montgomery Street, 10th Floor
Syracuse, New York 13202
Attorneys for Defendant Onondaga County

**THE WLADIS LAW FIRM, PC**         **KEVIN C. MURPHY, ESQ.**
6312 Fly Road
East Syracuse, New York 13057
Attorneys for Defendant Onondaga County

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs Cooper Crouse-Hinds ("CCH") and Cooper Industries ("CI") initiated this action on October 4, 2016, against Defendants City of Syracuse and County of Onondaga for claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *See* Dkt. No. 1. On October 25, 2021, this Court denied Defendant County's motion for summary judgment, granted in part and denied in part Defendant City's motion for summary judgment, and granted Plaintiffs' motion for partial summary judgment with respect to liability. *See* Dkt. No. 204. Each Defendant has filed a motion for reconsideration. *See* Dkt. Nos. 205, 206. For the following reasons, Defendants' motions are denied.

### II. BACKGROUND

For a complete recitation of the relevant background, the parties are referred to the Court's October 25, 2021 Memorandum-Decision and Order. *See* Dkt. No. 204.

### III. DISCUSSION

Motions for reconsideration proceed in the Northern District of New York under Local Rule 60.1. "In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements." *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995). Such

motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  The prevailing rule "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.  Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Here, there is no intervening change in controlling law, nor is there new evidence not previously available.  Therefore, Defendants' motion for reconsideration is seeking to prevent manifest injustice.  Both Defendants assert that the Court incorrectly determined that Plaintiff CCH incurred a response cost within the meaning of CERCLA.  Defendant City argues that the Court failed to address whether Plaintiff may recover costs that were incurred by non-party corporate entities.  Defendant City also requests clarification regarding the Court's statement that "in 1964, Defendant City dredged Ley Creek to obtain cover material for its landfill wastes." Dkt. No. 204 at 41.  And lastly, Defendant County also argues that the Court failed to address an alternative statute of limitation argument.  Each of these are address in turn below.

**A.     Whether Plaintiff CCH Incurred a Response Cost**

In order to establish a *prima facie* case of liability under CERCLA, a plaintiff is required to demonstrate that it incurred a response cost. *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 80 (2d Cir. 2014). The term "incur" is not defined by CERCLA. In its October 25, 2021 Memorandum Decision and Order, this Court held that "to incur" means a "legal obligation to pay a specific response cost." Dkt. No. 204 at 32. Additionally, the Court noted that which party actually paid the response was not the relevant consideration. *See id.* (citing *Andres v. Town of Wheatfield*, No. 1:17-CV-00377, 2020 WL 7764833, *6 (W.D.N.Y. Dec. 30, 2020) ("A party may be found to have incurred a cost without having actually paid for it and a finding that a cost has been incurred may be based upon an existing legal obligation")).

Accordingly, the Court identified an invoice from NYSDEC which named Plaintiff CCH as the "Applicant/Respondent/Volunteer" for $14,601.34. Dkt. No. 145-4 at 13. The Court found that Plaintiff CCH had a legal obligation to pay the invoice and therefore incurred a response cost. *See* Dkt. No. 204 at 32.

Defendants assert that the Court erred in two ways. First, Defendants argue that Plaintiff CCH did not actually pay the invoice because it was paid for by a separate non-party entity, CBE Services, Inc. As discussed above and in the October 25, 2021 Memorandum-Decision and Order, the "relevant inquiry is who assumed a legal obligation to pay." *Id.* at 31. Accordingly, the Court found a legal obligation to pay at least one invoice, without concern for which entity actually paid the invoice. *Id.* at 32. Defendants' argument that CBE Services actually paid the invoice, therefore, is misplaced.

Second, Defendants argue that Plaintiff CCH did not have a legal obligation to pay the invoice identified by the Court. Defendants argue that, although the invoice identifies Plaintiff CCH as the "Applicant/Respondent/Volunteer," the invoice was directed to Nelson M. Olavarria,

who was listed with the title of Director of Environmental Remediation & Assessment at Eaton

Cooper.  Therefore, Defendants argue, Eaton Cooper had the legal obligation to pay the invoice,

not Plaintiff CCH.

The 2011 Consent Order states that "Within forty-five (45) Days after receipt of an

itemized invoice from the Department, Respondent[1] shall pay to the Department a sum of

money…."  Dkt. No. 144-17 at 8.  "Such invoices," the Consent Order then states, "shall be sent

to Respondent at the following address":

> Nelson M. Olavarria
> Director, Environmental Assessment & Remediation
> Cooper US, Inc.
> 600 Travis, Suite 5600
> PO Box 4446
> Houston, Texas 77210

*Id.*

The clear and obvious reading of the 2011 Consent Order and the invoice is that Plaintiff

CCH had a legal obligation to pay the invoice and chose Mr. Olavarria to receive its invoices.

The Court does not understand the relevance of where Plaintiff CCH directed their invoices.  The

2011 Consent Order clearly states that the invoices "shall be sent to the Respondent," which is

Plaintiff CCH, at Mr. Olavarria's business address.  *Id.*  The Consent Order states that Plaintiff

CCH "shall pay to the Department" the amount of the invoice, and does not impose a similar

obligation on Mr. Olavarria, Cooper US, Inc., or Eaton Cooper.  *Id.*

Accordingly, Defendants' motions for reconsideration regarding whether Plaintiff CCH

incurred a response is denied.  As stated in its October 25, 2021 Memorandum-Decision and

---

[1] The 2011 Consent Order defines "Respondent" as Plaintiff CCH.  Dkt. No. 144-17 at 1.

Order, Plaintiff CCH had incurred a response cost because it had a legal obligation to pay at least one invoice relating to the response action from NYSDEC.

**B.      Response Costs Incurred by Non-Entities**

Defendant City moves for reconsideration because the Court did not address its argument that certain damages should be excluded because the costs were incurred by corporate non-parties other than Plaintiffs.  Dkt. No. 206-1 at 16.  Separate from whether these damages were "incurred" within the meaning of CERCLA, as discussed above, Defendant City argues that partial summary judgment on the issue of damages is appropriate because "[s]eparate corporate parties, even if affiliated, may not sue in the name of, or seek damages for injuries to, separate corporate parties, even if they are somehow affiliated." Dkt. No. 155-12 at 23.  Defendant City identified $422,097.83 that it argues were paid for by non-parties.  *See* Dkt. No. 206-1 at 16.

The Court agrees that a plaintiff cannot recover for damages that it did not suffer.  This basic principle applies to corporate affiliates in the CERCLA context.  *See, e.g.*, *S. Pac. Transp. Co. v. Voluntary Purchasing Grps. Inc.*, No. 94-CV-2477, 1997 WL 457510, *7 (N.D. Tex. Aug. 7, 1997) (holding that a corporate party may not recover response costs incurred by affiliate corporations under CERCLA); *United States v. Bestfoods*, 524 U.S. 51, 62 (1998) (recognizing corporate distinctions under CERCLA unless the standard for piercing the corporate veil is met). The Court, however, notes that Defendant City is incorrect that a corporation may not pierce its own corporate veil in the CERCLA context.  *See Rochester Gas & Elec. Corp. v. GPU, Inc.*, 355 Fed. Appx. 547, 551 (2d Cir. 2009)

At this stage, the Court declines to exclude any specific damages.  CERCLA cases are often bifurcated into a liability phase and a damages phase.  *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2d Cir. 1993).  Whether to bar certain damages "is a damages phase

issue." *Price Trucking Corp. v. Norampac Indus.*, Inc., No. 09CV990A, 2010 WL 4069223, *8 (W.D.N.Y. June 17, 2010), *report and recommendation adopted*, 2011 WL 767702 (W.D.N.Y. Feb. 25, 2011).  Indeed, what response costs Plaintiffs incurred "is more appropriately addressed when liability has been established."  *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 674 (S.D.N.Y. 1996).

The Court also notes that Plaintiffs have argued that costs were "allocated against the environmental remediation liabilities on CCH's books."  Dkt. No. 161-1 at 18; Dkt. No. 165 at ¶ 7.  "[T]he City's assertion that it can determine who 'paid' an invoice by evaluating the entity listed on the invoice itself is nonsensical," Plaintiffs argue.  Dkt. No. 161-1 at 18.  Based on the evidence at this stage, the Court is unable to determine whether this includes the $422,097.83 Defendant City has identified.

Accordingly, Defendant City's motion for partial summary judgment with regards to $422,097.83 is denied as premature.

**C.      Whether Defendant City Dredged Ley Creek**

In its October 25, 2021 Memorandum-Decision and Order, this Court held that Defendant City, in 1964, "dredged Ley Creek to obtain cover material for its landfill wastes."  Dkt. No. 204 at 41.  Defendant City now requests reconsideration or clarification because, it argues, "there is a question of material fact as to this contention."  Dkt. No. 206-1 at 19.  Defendant City correctly acknowledges that "[t]he assertion was not necessary for the Court's ruling on whether the City was an 'arranger' under CERCLA."  *Id.* at 23.  To the extent Defendant City seeks reconsideration, that motion is denied.  Because Defendant City, "by its own admission, is not seeking to 'alter the conclusion reached by the court,' its motion must be denied*."  RJE Corp. v. Northville Indus.*

*Corp.*, No. 02-CV-1440, 2002 WL 1750763, *1 (E.D.N.Y. July 29, 2002) (quoting *Shrader*, 70 F.3d at 257).

In addition to reconsideration, Defendant City also requests clarification.  "Unlike a motion for reconsideration, a motion for clarification is not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order."  *Metcalf v. Yale Univ.*, No. 15-CV-1696, 2019 WL 1767411, *2 (D. Conn. Jan. 4, 2019).  "[A] motion for clarification is not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order."  *Bank of New York Mellon, London Branch v. Cart 1, Ltd.*, No. 18-CV-6093, 2021 WL 2358695, *1 (S.D.N.Y. June 9, 2021).  Defendant City, however, has identified no ambiguity or difficulty understanding the Court's holding.  Rather, Defendant City is simply expressing its disagreement.  The motion for clarification, therefore, is denied.  *See, e.g.*, *Alston v. Pafumi*, No. 3:09-cv-1978, 2012 WL 6093893, *2 (D. Conn. Dec. 7, 2012) ("The Ruling speaks for itself. Accordingly, the motion for clarification is denied").

**D.     Statute of Limitations**

A suit under Section 107(a) must be commenced within three years after the completion of a "removal action" and within six years after the initiation of a "remedial action."  42 U.S.C. § 9613(g)(2).  In its October 25, 2021 Memorandum-Decision and Order, the Court held that the statute of limitations on Plaintiff CI's Section 107(a) claim did not expire because the construction of a perimeter fence, check dams, and observation wells, constituted removal actions.  *See* Dkt. No. 204 at 20-29.  Defendant County, however, also argued that even if the response actions were removals, the statute of limitations nonetheless expired.  The Court did not address whether the statute of limitations expired for the removal actions.  Now, Defendant County reasserts its

argument, stating that removal actions were "completed" in 2005, 2006, 2007, and 2009, and therefore, this action is untimely.  Dkt. No. 205-1 at 15.

Defendant County is mistaken that removal actions are completed when physical construction of a structure is completed.  First, the removal action continues while the structure performs its function; the date it is erected is irrelevant. *See, e.g.*, *New York v. Next Millenium Realty, LLC*, 732 F.3d 117, 126 (2d Cir. 2013); *Am. Premier Underwriters Inc. v. Gen. Elec. Co.*, 866 F. Supp. 2d 883, 898 (S.D. Ohio 2012).  Second, the construction of the perimeter fence, check dams, and observation wells were all part of the same, singular, removal action.  "[C]ourts have generally held that there can be only one removal and one remedial action per facility, regardless of the number of phases in which the clean-up occurs."  *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 236 (2d Cir. 2014); *see also Colorado v. Sunoco*, 337 F.3d 1233, 1241 (10th Cir. 2003) ("In our view, this language [of the statute] indicates there will be but one 'removal action' per site or facility, as well as a single 'remedial action' per site or facility").

For example, in *Next Millenium Realty*, 732 F.3d at 126, the plaintiff constructed an air stripper tower, which was completed in 1997.  NYSDEC issued the Record of Decision, which outlined the remedial design, in 2003, and the lawsuit was initiated in 2006, nine years after the completion of the air stripper tower.  *Id.* at 123.  The Second Circuit held that the three-year statute of limitations is triggered by the "completion of the removal." *Id.*  "Because the removal measures cannot be deemed to have been completed in any sense before the State's adoption of a remediation plan that incorporated them … the statute of limitations had not run as of the time this action was commenced." *Id.* at 126.

Accordingly, Defendant County's argument that the three-year statute of limitations began to run when the perimeter fence, monitoring wells, or check dams were constructed is misplaced. Because Defendant County provides no evidence or argument for the completion of the removal action beyond the dates of the physical construction, the Court denies its motion for reconsideration regarding whether the Section 107(a) claim is timely.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant County's motion for reconsideration (Dkt. No. 205) is **DENIED**; and the Court further

**ORDERS** that Defendant City's motion for reconsideration and/or clarification (Dkt. No. 206) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 4, 2022
      Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**