**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF NEW YORK**
_____

**COOPER CROUSE-HINDS, LLC, COOPER
INDUSTRIES, LLC,**

                              **Plaintiffs,**

     **vs.**

                                                              **5:16-cv-1201**
                                                              **(MAD/ATB)**

**CITY OF SYRACUSE, NEW YORK, COUNTY OF
ONONDAGA, NEW YORK,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**SQUIRE PATTON BOGGS LLP**              **BRIAN D. STARER, ESQ.**
1211 Avenue of the Americas, 26th Floor   **VICTOR GENECIN, ESQ.**
New York, New York 10112
Attorneys for Plaintiffs

**SQUIRE PATTON BOGGS LLP**              **D. REES ALEXANDER, ESQ.**
41 S. High Street, Suite 2000            **DANELLE M. GAGLIARDI, ESQ.**
Columbus, Ohio 43215                     **REBEKAH M. SINGH, ESQ.**
Attorneys for Plaintiffs                 **VINCENT ATRIANO, ESQ.**

**HANCOCK ESTABROOK, LLP**              **JOHN G. POWERS, ESQ.**
1800 AXA Tower I                         **MARY L. D'AGOSTINO, ESQ.**
100 Madison Street
Syracuse, New York 13202
Attorneys for Defendant City of Syracuse

**CITY OF SYRACUSE**                    **RAJU I. FINNEY, ESQ.**
**CORPORATION COUNSEL**
233 East Washington Street
Room 300 City Hall
Syracuse, New York 13202
Attorneys for Defendant City of Syracuse

**CITY OF SYRACUSE**                    **TODD M. LONG, ESQ.**
**LAW DEPARTMENT**

233 East Washington Street
300 City Hall
Syracuse, New York 13202
Attorneys for Defendant City of Syracuse

**ONONDAGA COUNTY**                    **BENJAMIN M. YAUS, ESQ.**
**DEPARTMENT OF LAW**
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, New York 13202
Attorneys for Defendant Onondaga County

**THE WLADIS LAW FIRM, PC**            **KEVIN C. MURPHY, ESQ.**
6312 Fly Road                          **CHRISTROPHER BAIAMONTE, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendant Onondaga County

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiffs Cooper Crouse-Hinds ("CCH") and Cooper Industries ("CI") initiated this action on October 4, 2016, against Defendants City of Syracuse and County of Onondaga for claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  *See* Dkt. No. 1.  On October 25, 2021, this Court denied Defendant County's motion for summary judgment, granted-in-part and denied-in-part Defendant City's motion for summary judgment, and granted Plaintiffs' motion for partial summary judgment with respect to liability.  *See* Dkt. No. 204.  In advance of a bench trial scheduled for April 5, 2022, the parties have filed motions *in limine*.  *See* Dkt. Nos. 219, 222, 228, 229, 230, 231, 247.

### II. BACKGROUND

The Court assumes the parties' familiarity with the background of this case.  For a complete recitation of the relevant facts, the parties are referred to the Court's October 25, 2021 Memorandum-Decision and Order.  *See* Dkt. No. 204.

### III. DISCUSSION

#### A.   Standard of Review

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).  A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds.  *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94–CV–5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998).  Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context.  *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).  Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41–42.

The Second Circuit has noted that "the admission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis." *BIC Corp. v. Far Eastern Source Corp.*, 23 Fed. Appx. 36, 39 (2d Cir. 2001) (citations omitted).  Thus, while standards for admissible evidence are not "out the window entirely" in a bench trial, "all doubts at a bench trial should be resolved in favor of admissibility." *Dreyful Ashby, Inc. v. S/S "Rouen"*, No. 88-CV-2890, 1989 WL 151685, *2 (S.D.N.Y. Dec. 12, 1989).

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.  That Rule provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In reviewing the admissibility of expert testimony, "the district court has a 'gatekeeping' function under Rule 702—it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).  The rule set forth in *Daubert* applies to scientific knowledge, as well as technical or other specialized knowledge.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

As the Second Circuit has explained,

> [i]n fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, *i.e.*, whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Next, the district court must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered.  In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case.  In short, the district court must make certain that an expert, whether basing testimony upon professional

4

studies or personal experience, employs in the courtroom the same
level of intellectual rigor that characterizes the practice of an expert
in the relevant field.

*Amorgianos*, 303 F.3d at 265-66 (internal alterations, quotations, and citations omitted).  The Court must also consider the fact that "experience in conjunction with other knowledge, skill, training or education ... [may] provide a sufficient foundation for expert testimony," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702; *see also Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

"In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions."  *Amorgianos*, 303 F.3d at 266 (citation omitted).  "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand."  *Id.* at 267.  "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible."  *Id.*  "The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions."  *Id.* (quotation and other citation omitted).

As the courts and Advisory Committee have made clear, "the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702, Advisory Committee's Note; *see also E.E.O.C. v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 456 (S.D.N.Y. 2004); *U.S. Info. Sys.,*

*Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 313 F. Supp. 2d 213, 226 (S.D.N.Y. 2004). "This principle is based on the recognition that 'our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.'" *Melini v. 71st Lexington Corp.*, No. 07-CV-701, 2009 WL 413608, *5 (S.D.N.Y. Feb., 3, 2009) (quoting *Amorgianos*, 303 F.3d at 267).

**B.**      **Defendant County's First Motion *in Limine*: Defendants Were Required To Introduce Evidence of Their Response Costs**

Defendant County asserts that Plaintiffs were required to introduce evidence of their response costs pursuant to Rule 26(a) of the Federal Rules of Civil Procedure.  Rule 26(a) provides:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties ... a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered

Fed. R. Civ. P. 26(a).  Defendant County states that "incurring response cost is a necessary element of Plaintiffs' causes of action under 42 U.S.C. §§ 9607(a) and 9613."  Dkt. No. 219-6 at 10.

It is unclear what Defendant County requests, if anything.  Regardless, whether Plaintiffs have incurred a response cost has been addressed multiple times by this Court.  *See* Dkt. No. 173 at 16; Dkt. No. 214 at 4.  A motion *in limine* is not the proper vehicle to challenge an order on summary judgment.  *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 126 (E.D.N.Y. 2013).  Accordingly, Defendant County's first motion *in limine* is denied.

**C.      Defendant County's Second Motion *in Limine*: Evidence Not Produced in Discovery Allowed May Not Be Introduced at Trial**

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that if a party fails to comply with the requirements of Rule 26(a), "the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Thus, the "'[f]ailure to provide damage computation documents may result in exclusion of damages calculation evidence or expert testimony regarding damage calculations at trial.'" *Salvemini v. Target Stores, Inc.*, No. 3:08-CV-402, 2012 WL 1118062, *3 (D. Conn. Apr. 3, 2012) (citation omitted). Defendant County argues that Plaintiffs should be precluded from introducing evidence which was not produced in discovery. Plaintiffs, in their response, indicate no intention to introduce evidence which was not produced in discovery. *See* Dkt. No. 244 at 9. Accordingly, at this time, "it is not clear that [Plaintiffs] have run afoul of their Rule 26(a) obligations, a necessary condition to trigger Rule 37." *Halpa v. Cty. of Suffolk*, No. 2:15CV2175, 2021 WL 1601112, *4 (E.D.N.Y. Apr. 23, 2021).

Defendant County seeks to exclude Dr. Campbell's testimony for a similar reason. "He could not identify any Cooper or CCH response costs in his report or during his deposition and he should not be able to attempt to do so at trial," Defendant County argues. Dkt. No. 219-6 at 14. Plaintiffs, however, contend that "Dr. Campbell's expert report directly references his reliance on invoices." Dkt. No. 244 at 10. Therefore, Plaintiffs argue, Defendant County's motion *in limine* seeking to preclude Dr. Campbell from testifying regarding damages is too broad. *Id.* The Court agrees. Plaintiffs have disclosed that Dr. Campbell relied on certain invoices to form his conclusions. Defendant County's motion seeking Dr. Campbell be precluded from testifying to

response costs *in toto*, therefore, is too broad and denied.  Dr. Campbell, however, may not testify beyond that which is disclosed in the expert report.

**D.      Defendant City's First Motion *in Limine*: Plaintiffs' Experts Are Cumulative**

Defendant City moves this Court to preclude cumulative expert testimony.  *See* Dkt. No. 222-1 at 2.  Federal Rule of Evidence 403 allows a Court to exclude relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Defendant City argues that Plaintiffs' experts provide needlessly cumulative evidence.  Specifically, Defendant City argues that four experts opine that that the City used PCB contaminated sediment as cover material for its municipal landfilling operation; three opine that Crouse Hinds did not generate PCBs in either its manufacturing operations or its facility waste; three opine that dredged sediment encroached onto the nearby wetlands; four opine that municipal waste from Plaza East encroached on the North Landfill, leading to a PCB hotspot; three opine that foundry sand is harmless and does not contain PCBs; and three opine that that municipal waste leachate contains hazardous waste.  Dkt. No. 222-1 at 5.  Plaintiffs, however, contend that their experts offer distinct opinions, observations, and expertise regarding each opinion.  *See* Dkt. No. 245 at 9.

A party may not "make its case through the sheer weight of successive expert testimony . . . as to their identical conclusions on identical issues."  *United States v. Walker*, 910 F. Supp. 861, 863 (N.D.N.Y. 1995).  However, "[a] federal district court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds" and "[u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial so that

questions of foundation, relevancy and potential prejudice may be resolved in proper context."
*Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 554 (E.D.N.Y. 2011).

As discussed in the March 24, 2022, pre-trial conference, the Court will determine whether Plaintiffs' experts offer cumulative opinions in the course of the trial. Whether an expert offers cumulative testimony will be decided in context and with the knowledge of the testimony already proffered by the other experts. Accordingly, the Court reserves on Defendant City's motion *in limine* to preclude Plaintiffs' experts from testifying because their opinions are cumulative. *See Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287.

### E.   Defendant City's Second Motion *in Limine*: Plaintiffs' Experts Offer Mere *Ipse Dixit* Opinion

Defendant City argues that Plaintiffs' experts rely on *ipse dixit* opinion rather than actual scientific or technical methodology and expertise. Specifically, Defendant City argues that Plaintiffs' experts relied on historical documents and other reports provided by Plaintiffs rather than their own scientific or technical methodology and expertise. *See* Dkt. No. 222-1 at 7.

As stated above, in reviewing the admissibility of expert testimony, "the district court has a 'gatekeeping' function under Rule 702—it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos*, 303 F.3d at 265 (quoting *Daubert*, 509 U.S. at 597). "[T]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142; *see also United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015).

Here, the Court does not find the Plaintiffs' experts' opinions to be unreliable because they rely on historical documents and reports. Indeed, courts have recognized "circumstantial

evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain" is often necessary in CERCLA litigation. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 131 (2d Cir. 2010). Defendant City has recognized, here, there are "no actual, live witnesses who possess first-hand knowledge." Dkt. No. 253-1 at 9. Plaintiffs' experts' reliance on historical documents, therefore, is not only unsurprising, but reflects the reality of an old and complex case in which context may be essential to understanding any underlying data.

Rule 702 recognizes the need for this flexibility, referring to "other specialized knowledge." *See, e.g.*, *Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) ("Scientists, too, form professional opinions that are reasonably based on 'good science' but where the data is insufficient for definitive scientific proof"). Accordingly, the Court recognizes the need for expert witnesses to rely on broader contextual documents outside strict confines of scientific methodology. *See, e.g.*, *Olindo Enterprises, Inc. v. City of Rochester*, No. 05-CV-6246, 2008 WL 686259, *5 (W.D.N.Y. Mar. 7, 2008) (admitting expert testimony that relied on laboratory data and other sources including "records and historical information produced concerning the Site").

Furthermore, in the context of a bench trial, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise." *MPM Silicones, LLC v. Union Carbide Corp.*, No. 1:11CV1542, 2016 WL 11604974, *5 (N.D.N.Y. July 7, 2016) (collecting cases). "At trial in the case at bar, the Court will be the trier of fact, and consequently will not have to function as a gate-keeper for a jury. Using the discretion given to it, the Court will parse and evaluate the evidence as it comes in." *United States v. Alcan Aluminum Corp.*, No. 5:03-CV-0765, 2006 WL 5278224, *1 (N.D.N.Y. June 9, 2006).

Here, the method to contest the factual underpinnings of expert opinions which Defendant City has noted is "vigorous cross examination, [and] presentation of contrary evidence." *Atl.*

10

*Specialty Ins. Co. v. Gold Coast Dev., Inc.*, No. 05-CV-4863, 2008 WL 974411, *9 (E.D.N.Y.
Apr. 8, 2008) (citing *Daubert*, 509 U.S. at 596 (citations and quotations omitted)).  "'[G]aps or
inconsistencies in the reasoning leading to [the expert's] opinion … go to the weight of the
evidence, not to its admissibility.'"  *Restivo*, 846 F.3d at 577 (quoting *Campbell ex rel. Campbell
v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001)); *Olin Corp. v. Certain
Underwriters at Lloyd's London*, 468 F.3d 120, 134 (2d Cir. 2006) (affirming admissibility of
expert testimony in a CERCLA where "problems went to the weight, rather than admissibility of
the testimony").

## F.       Defendant City's Third Motion *in Limine*: Expert Reports Are Inadmissible Hearsay

Defendant City asserts that expert reports are "inadmissible under the Federal Rules of
Evidence."  Dkt. No. 222-1 at 12.  The Court is unaware of any broad rule that all expert reports
are inadmissible hearsay.  Rather, "an expert's report may not be used as a conduit for the
inadmissible hearsay of another, but an expert may rely on hearsay sources that she used in
forming her opinion."  *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 980 F. Supp.
2d 425, 442 (S.D.N.Y. 2013); *In re Lyondell Chem. Co.*, 558 B.R. 661, 667 (Bankr. S.D.N.Y.
2016) ("An expert report that serves as a mere 'conduit' for hearsay likewise infringes the role of
the factfinder because 'the job[ ] of judging [the hearsay] witnesses' credibility and drawing
inferences from their testimony belongs to the factfinder'") (quoting *Marvel Characters, Inc. v.
Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)).

Plaintiffs have indicated that they plan to "use their expert reports during their testimony
to refresh their recollections" pursuant to Federal Rule of Evidence 612.  Dkt. No. 245 at 18.
Such use of expert testimony is proper, and therefore Defendant City's motion to preclude any
reference to the expert report is denied.  To the extent Plaintiffs will seek to move portions of

11

their experts' reports into evidence, the Court will determine at trial whether they are conduits for hearsay.  At this time, however, the Court declines to adopt a wholesale prohibition on the admissibility of expert reports, as Defendant City has requested—particularly here where "[h]aving available an expert's comprehensive written report may help a [factfinder] to more fully understand and evaluate that expert's testimony and conclusions and their impact on the case." *N.A.A.C.P. v. A.A. Arms, Inc.*, No. 99 CV 3999, 2003 WL 2003750, *1 (E.D.N.Y. Apr. 4, 2003).

**G.      Defendant City's Fourth Motion *in Limine*: Plaintiffs' Expert Noel Cannot Testify That 80% of Remediation Costs Should Be Assigned to the Defendants**

Defendant City seeks to preclude Plaintiffs' expert Noel from testifying that 80% of the remediation costs should be assigned to Defendants.  As discussed at the March 24, 2022 pretrial conference, Federal Rule of Evidence 704(a) specifically permits an expert to proffer testimony that "embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704(a). "Indeed, 'if a witness (especially an expert) provides a solid foundation and explanation on an issue for which the factfinder needs assistance, the factfinder might be left hanging if the witness cannot cap off the testimony with a conclusion about the ultimate issue to which the expert is testifying.'" *Krys v. Aaron*, 112 F. Supp. 3d 181, 192 (D.N.J. 2015) (quoting 3 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 704.02[1] (9th ed. 2006)).

Defendant City's motion to preclude Noel from testifying that 80% of damages should be allocated to Defendants is therefore denied.

**H.      Defendant City's Fifth Motion *in Limine*: Plaintiffs' Experts May Not Testify That Materials on Plaza East Encroached onto Plaintiffs' Property**

Defendant City argues that Dr. Blasting should be precluded from testifying that there is "strong evidence" that materials on Plaza East were placed by Defendant City and encroached

onto "Cooper property."  Dkt. No. 222-1 at 16.  Defendant City asserts that this is not a "matter within his scientific, technical or specialized knowledge and it is based on the hearsay opinions of others." *Id*.

As discussed at above, in the context of a bench trial, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise." *MPM Silicones, LLC*, 2016 WL 11604974, at *5 (collecting cases).  The method to contest the factual underpinning of expert opinion which Defendant City has raised is "vigorous cross examination, [and] presentation of contrary evidence." *Atl. Specialty Ins. Co. v. Gold Coast Dev., Inc.*, No. 05–CV–4863, 2008 WL 974411, *9 (E.D.N.Y. Apr. 8, 2008).  At this time, the Court finds that Mr. Blasting's expert testimony is facially reliable to evaluate at trial.

## I.   Defendant City's Sixth Motion *in Limine*: Plaintiffs' Experts May Not Testify to the Interpretation of Historical Documents

Defendant City argues that Plaintiffs' experts should be precluded from offering their interpretation of Crouse Hinds internal memoranda from the 1960s. Dkt. No. 222-1 at 17-21.  As stated above, this case involves events that transpired over fifty years ago and no witnesses with firsthand knowledge are available to testify.  Courts have recognized CERCLA litigation may require "circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain." *Niagara Mohawk Power Corp.*, 596 F.3d at 131.  The internal memoranda from the 1960s provide useful context to an expert witness in crafting an opinion.

And again, "without the risk of poisoning the jury with misleading expert testimony of limited probative value, *see Daubert, 509 U.S. at 595*, the Court can take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology." *Joseph S. v. Hogan*, No. 06 CIV. 1042, 2011 WL 2848330, *3 (E.D.N.Y. July 15, 2011) (citing

*BIC Corp. v. Far Eastern Source Corp.*, 23 Fed. Appx. 36, 39 (2d Cir. 2001)).  "In other words, such evidence should be quite freely admitted so that the judge may have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions." *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 402 (S.D.N.Y. 2019) (internal quotations omitted).  The Court, therefore, declines to preclude Plaintiffs' experts from relying on internal Crouse Hinds memoranda from the 1960s.

**J.**     **Defendant City's Seventh Motion *in Limine*: Plaintiffs' Experts May Not Testify to Non-PCB Drivers of Contamination**

Defendant City argues that Plaintiffs' experts' written disclosures focus exclusively on PCBs as the driver of contaminants at the facility, and therefore they should not be allowed to testify about non-PCB drivers of contamination.  Dkt. No. 222-1 at 21-25.  Specifically, Defendant City argues that the expert reports of Dr. Blasting, Dr. Campbell and Mr. Noel do not address non-PCB contaminants.

Plaintiffs correctly point out that Mr. Noel opined that "VOCs, SVOCs, pesticides and metals were also detected above screening criteria in the various media." Dkt. No. 224-5 at 8. Accordingly, Defendant City's motion with respect to Mr. Noel is denied.  Plaintiffs, however, do not contest that Dr. Blasting and Dr. Campbell do not address non-PCB drivers of contamination in their expert report.  "The burden to prove substantial justification or harmlessness rests with the party who has failed to disclose information pursuant to Rule 26." *Wright v. Aargo Sec. Servs., Inc.*, No. 99 CIV. 9115, 2001 WL 1035139, *2 (S.D.N.Y. Sept. 7, 2001).  Defendant City's motion with respect to Dr. Blasting and Dr. Campbell is therefore granted.

**K.**     **Defendant City's Eighth Motion *in Limine*: Plaintiffs May Not Subpoena Mary Robinson**

For the reasons stated in the March 24, 2022 pretrial conference, Defendants' motion *in limine* to preclude Mary Robinson from testifying is denied.

**L.      Defendant City's Ninth Motion *in Limine*: Plaintiffs May Not Call Joseph Rutledge as a Witness**

Defendant City states that "[b]ecause Plaintiffs failed to identify Mr. Rutledge as a witness prior to the close of discovery … he should be precluded from testifying." Dkt. No. 247 at 5.  If a party fails to disclose a witness under Federal Rule of Civil Procedure 26(a) or (e), a party may not use that witness unless the failure to disclose was substantially justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1).  "In determining whether preclusion is appropriate, courts must consider: (1) the reasons for the delay in providing the evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance."  *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017) (citing *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)); *see also Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (same).

Plaintiffs state Mr. Rutledge is a summary witness under Federal Rule of Civil Procedure 1006, and is not offering any new information.  "[B]ecause a summary witness is not a fact witness and will not be offering new information," the Court does not find any prejudice in allowing Mr. Rutledge to testify.  *S.E.C. v. Badian*, 822 F. Supp. 2d 352, 367 (S.D.N.Y. 2011). Given the voluminous record in this case, the Court finds that the testimony will be important in resolving this complex matter.  Additionally, Plaintiffs disclosed to Defendants in April 2021, approximately a year before the trial is scheduled to commence, that Mr. Rutledge will testify. Any prejudice that Defendant City will incur is minimal.

15

Defendant City's motion *in limine* to preclude Mr. Rutledge from testifying is therefore denied.

**M.     Defendant City's Tenth Motion *in Limine*: Plaintiffs May Not Introduce Deposition Transcripts from Their Own Witnesses**

Federal Rule of Civil Procedure 32(a)(4) allows the deposition testimony of a party to be used at trial when the witness is unavailable "if the court finds … that the witness is more than 100 miles from the place of the hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition."  Defendant City suggests that Rule 32(a)(4) is inapplicable to a party's own witness because Rule 32(a)(1) states "all or part of a deposition may be used against a party."  *See* Dkt. No. 247 at 7.  The Second Circuit, however, has recognized that Rule 32(a)(4) "permits the use of a party's own deposition testimony as evidence[.]"  *Junjiang Ji v. Jling Inc.*, No. 15-CV-4194, 2017 WL 6501865, *1 (E.D.N.Y. Dec. 19, 2017) (citing *Richmond v. Brooks*, 227 F.2d 490, 492 (2d Cir. 1955)).

Here, Plaintiffs have stated that "all of the witnesses for which Plaintiffs seek to introduce deposition transcripts are" more than 100 miles from Albany, New York.  Dkt. No. 258 at 6. Defendant City does not assert that these witnesses are less than 100 miles from Albany, New York.  Defendant City's motion to exclude the deposition testimony of Mr. Olavarria, Mr. Caporin, Mr. D'Agostino, Mr. Sensinger, and Mr. Ronkainen is therefore denied.

**N.     Plaintiffs First Motion *in Limine*: Documents Received by Plaintiffs on March 14, 2022, Should Be Excluded**

Plaintiffs ask the Court to preclude evidence that Defendant City received from third-party Monsanto Company because it was provided to Plaintiffs after the close of discovery and less than thirty days before trial, contrary to Fed. R. Civ. P. 26(a).

16

On February 22, 2022, more than thirty days in advance of trial, Defendant City disclosed newly discovered documents from a public source to Plaintiffs.  Dkt. No. 246-3.  Immediately after, on February 23, 2022, Defendant City sent a subpoena to its process server, which was then served on Monsanto the next day.  Dkt. No. 246-7.  In its subpoena *duces tecum*, Defendant City sought authenticated and completed copies from Monsanto of the documents disclosed to Plaintiffs on February 22.  Dkt. No. 246-4.  On March 11, 2022, Monsanto responded to the subpoena, and Defendant City disclosed the documents to Plaintiffs within one business day, on March 14, 2022.  Dkt. No. 246-8.

"As a general matter, trial subpoenas are appropriate only in certain circumstances, such as to secure an original document first disclosed during discovery, for the purposes of trial preparation, or for memory recollection."  *Hickey v. Myers*, No. 09-CV-01307, 2013 WL 2418252, *5 (N.D.N.Y. June 3, 2013) (citing *Revander v. Denman*, No. 00 Civ. 1810, 2004 WL 97693, *1 (S.D.N.Y. Jan. 21, 2004)).  Here, Defendant City targeted specific documents from a third-party in order to authenticate documents already in its possession.  Therefore, the fact that these documents were obtained after the close of discovery is irrelevant.  *Revander*, 2004 WL 97693, at *1 (holding that a trial subpoena is appropriate "to secure an original document" already in the requesting party's possession).

Fed. R. Civ. P. 26(a)(3)(B) states that "at least 30 days before trial" a party must disclose "each document or other exhibit" it expects to offer at trial.  Here, that deadline was March 4, 2022.  As noted above, Defendant City issued its subpoena to Monsanto on February 23, 2022, but did not receive a response until March 11, 2022.  Fed. R. Civ. P. 37(c)(1) provides, in pertinent part, that "[i]f a party fails to provide information ... as required by Rule 26(a), the party is not allowed to use that information ... to supply evidence ... at trial ... unless the failure was

substantially justified or was harmless."  The Court has discretion in applying Rule 37(c)(1) to

preclude evidence.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).  The

Second Circuit has directed courts to consider the following factors when determining whether to

preclude evidence under Rule 37(c)(1):

> (1) the party's explanation for the failure to comply with the
> [disclosure requirement]; (2) the importance of the testimony of the
> precluded witness[es]; (3) the prejudice suffered by the opposing
> party as a result of having to prepare to meet the new testimony;
> and (4) the possibility of a continuance.

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alterations in original).

After considering, the factors in *Patterson*, the Court will not preclude the documents

disclosed to Plaintiffs on March 14, 2022.  Defendant City did not comply with Rule 26(a)(3)(B)

because the documents were not in its possession prior to March 4.  Defendant City discovered

relevant documents through its own research and promptly sought their authentication.  The Court

also believes that the documents are important to trial.

The Court recognizes that Plaintiffs will suffer some prejudice by receiving documents

less than thirty days before the trial is scheduled to commence.  The Court, however, finds that

the prejudice is severely diminished here because the information within the documents was

substantially disclosed to Plaintiffs on February 22, more than thirty days before trial.

Accordingly, Plaintiffs' first motion *in limine* is denied.

**O.      Plaintiffs' Second Motion *in Limine*: Defendant City's Sampling Data Exhibits
Should be Excluded**

Plaintiffs seek to exclude demonstrative maps prepared by Defendant City because their

authentication requires "the application of expertise, and yet were not disclosed in an expert

report."  Dkt. No. 229 at 3.  Defendant City states that the maps "spatially display the location of

different concentrations of environment contaminants, which is data that comes *directly* from the Plaintiffs' *own* remedial investigation reports." Dkt. No. 241 at 1 (emphasis in original). Defendant City further states that the "demonstrative maps summarize the geographic location of 502 sediment samples, 84 groundwater samples, 71 soil borings[,] 87 test pit samples, and 21 surface water samples.  In addition, the maps represent sample testing results for 11 different hazardous substances at 16 different depth levels." *Id.* at 8 n.4.

Federal Rule of Evidence 1006 authorizes a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006.  The Court "possesses broad discretion to determine the mode by which evidence is presented to the [factfinder]," and that "discretion generally encompasses the authority to allow the use of demonstrative aides, including the display of charts or tables accurately summarizing the content" of admissible evidence. *Briese Lichttenchnik Vertriebs Gmbh v. Langton*, No. 09-CV-9790, 2013 WL 12061874, *3 (S.D.N.Y. Dec. 18, 2013).

Plaintiffs argue that these maps require an expert to authenticate due to their technical nature.  The Court disagrees.  The demonstrative maps simply overlay data provided by Plaintiffs onto the relevant site.  *See, e.g., United States v. Espinal–Almeida*, 699 F.3d 588, 608, 610–13 (1st Cir. 2012) (rejecting the need for an expert to authenticate "plotting coordinates from the GPS").  Here, the demonstrative exhibits can be authenticated "by merely articulating facts, and not opinions." *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 140 (E.D.N.Y. 2013).  The Court does not find any highly technical expertise required to authenticate data overlayed onto a map.  And to the extent that Plaintiffs argue that the demonstrative exhibits "do not fairly represent the [underlying] documents," such objections "go more to [the summary's] weight than

to its admissibility." *U.S. ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 163 (2d Cir. 1996)).

Plaintiffs additionally argue that the Court should exclude the demonstrative exhibits pursuant to Federal Rule of Evidence 403 because additional documents to review would result in unfair prejudice. The Court finds that whatever prejudice the additional documents may create does not substantially outweigh their probative value. The demonstrative maps summarize large quantities of data that the Court believes may clarify the factual underpinnings of this complex case.

**P.      Plaintiffs' Third Motion *in Limine*: The Unauthenticated Version of the County Option Agreement Should be Excluded**

As discussed in the March 24, 2022 pretrial conference, the Court will rule on the admissibility of both County Option Agreements at trial. *See, e.g.*, *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121, 133 n.13 (E.D.N.Y. 2013) ("At present, this Court is unable to assess where and when the countless photographs were actually taken, *i.e.*, their authenticity, and refrains from conducting this assessment until Plaintiffs attempt to introduce them at trial"). It is premature at this stage to rule whether either version of the County Option Agreement can be authenticated. *United States v. Ulbricht*, 79 F. Supp. 3d 466, 488 (S.D.N.Y. 2015) ("Whether the Government can meet Rule 901's authentication standard with respect to the challenged exhibits is a question best answered at trial. There simply is no basis to prejudge the Government's ability to meet that standard").

The Court therefore reserves on Plaintiffs' motion *in limine* to exclude the unauthenticated version of the County Option Agreement.

**Q.**    **Plaintiffs' Fourth Motion *in Limine*: Plaintiffs' Environmental Compliance Audits are entitled to Self-Critical Analysis Privilege and Work Product Privilege**

Plaintiffs request that the Court "exclude all environmental compliance audits performed by Plaintiffs, as they are privileged under the self-critical analysis privilege and the work product doctrine." Dkt. No. 231 at 3. "[N]either the United States Supreme Court nor the Second Circuit have recognized" the self-critical analysis privilege. *Zikianda v. Cty. of Albany*, No. 1:12-CV-1194, 2013 WL 936446, *3 (N.D.N.Y. Mar. 8, 2013). As the court in *Zikianda* observed, the majority of the cases within this Circuit that have addressed the presence of the self-critical analysis privilege have declared its existence doubtful and accordingly have not recognized it. *Zikianda*, 2013 WL 936446, at *3 (collecting cases). Courts that have recognized the privilege have weighed whether:

> (1) the information in question results from critical self-analysis undertaken by the party seeking protection, (2) the public has a strong interest in preserving the free flow of the type of information sought, (3) the information is of the type whose flow would be curtailed if discovery was not allowed, and (4) with the expectation it would remain confidential.

*Zikianda*, 2013 WL 936446, at *3 (citing *Ovesen v. Mitsubishi Heavy Indus. of Am. Inc.*, 2009 WL 195853, at *2 (S.D.N.Y. Jan. 23, 2009)) (other citations omitted). "Once these high hurdles have been met, nonetheless, the privilege would not preclude disclosure of pure facts or even evaluative material that could not have been expected to be confidential." *Zikianda*, 2013 WL 936446, at *3.

Assuming the privilege exists in the Second Circuit, it is not applicable here. Plaintiffs, who bear the burden in asserting the privilege, have only offered a "formulaic assertion" that disclosure here would discourage compliance with regulatory and professional standards. *See*

21

*Haus v. City of New York*, No. 03-CV-4915, 2005 WL 1705291, *3-4 (S.D.N.Y. July 21, 2005);

*Ravenell v. Avis Budget Grp.*, Inc., No. 08-CV-2113, 2012 WL 1150450, *5 (E.D.N.Y. Apr. 5,

2012) ("I also reject the defendants' contention that the privilege applies because, having

presented only a conclusory assertion that the impetus to conduct such audits would be chilled in

the future").  Here, Plaintiffs have not specifically identified the documents they seek to protect,

instead broadly referring to environmental compliance audits.  Plaintiffs have failed to

demonstrate that they would be "less likely to undertake this type of internal investigation in the

future if the resulting … reports were discoverable in litigation."  *Chamberlain v. City of White

Plains*, No. 12-CV-5142, 2014 WL 12768502, *1 (S.D.N.Y. Oct. 14, 2014); *E.B. v. N.Y.C. Bd. of

Educ.*, 233 F.R.D. 289, 296 (E.D.N.Y.2005) (requiring a "detailed and convincing showing" to

invoke the self-critical analysis privilege).

Moreover, self-critical privilege is a waivable privilege against disclosure, not an

evidentiary rule of preclusion.  The privilege only applies to documents that "have been prepared

and retained on a confidential basis."  *Wimer v. Sealand Serv., Inc.*, No. 96 CIV. 8730, 1997 WL

375661, *1 (S.D.N.Y. July 3, 1997).  Assuming that Plaintiffs have produced the environmental

compliance audits in discovery, and had not sought to claw back the documents, then the privilege

has been waived.  *Johannes v. Lasley*, No. 17CV3899, 2019 WL 1958310, *5 (E.D.N.Y. May 2,

2019) (self-critical analysis privilege waived by failure to identify it on privilege log as a basis for

non-disclosure); *Bravo v. Bd. of Cty. Commissioners for Cty. of Dona Ana*, No. CIV 08-0010,

2009 WL 10706756, *3 (D.N.M. Nov. 24, 2009) ("even if the self-critical analysis privilege could

be recognized in the prison context which is doubtful, PHS clearly waived any such privilege by

failing to keep the QI information confidential").

For similar reasons, Plaintiffs' claim of work-product privilege is denied.  The environmental compliance audits were not identified for this Court's review and Plaintiffs have not prepared a privilege log.  *See, e.g.*, *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386–87 (2d Cir. 2003).  Plaintiffs have failed to identify whether the documents are fact product or opinion product, further frustrating meaningful review of their privilege claim by this Court.  *See, e.g.*, *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).  And Plaintiffs have seemingly failed to keep their work product confidential and have already disclosed it in discovery.  Accordingly, Plaintiffs' motion *in limine* to exclude the environmental compliance audits is denied.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motions *in limine* (Dkt. Nos. 228, 229, 230, 231) is **DENIED-in part, and RESERVED-in-part**; and the Court further

**ORDERS** that Defendant City's motions *in limine* (Dkt. Nos. 222, 247) is **GRANTED-in part, DENIED-in-part, and RESERVED-in-part**; and the Court further

**ORDERS** that Defendant County's motion *in limine* (Dkt. No. 219) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 31, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

23